United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN J. NORTON,<br><br>    Plaintiff,<br><br>    v.<br><br>L. HALLOCK,<br><br>    Defendant. | Case No. 17-CV-04957 LHK (PR)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

    Plaintiff, a California state prisoner proceeding *pro se*, filed a civil rights action under 42 U.S.C. § 1983 alleging that defendant L. Hallock violated plaintiff's First Amendment right to access the courts. Defendant has filed a motion to dismiss and motion for summary judgment.[1] Plaintiff has filed an opposition, and defendant has filed a reply. For the reasons stated below, defendant's motion for summary judgment is GRANTED.

## BACKGROUND

    On May 27, 2015, while plaintiff was housed at Pelican Bay State Prison ("PBSP"), he filed a motion for reconsideration in an unrelated federal habeas corpus proceeding in the U.S. District Court for the Central District of California, *see Norton v. Ducart*, Case No. 14-CV-01227-

---

[1] Defendant's request for judicial notice is granted.
Case No. 17-CV-04957 LHK (PR)
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1

JAK (C.D. Cal. closed on Jan. 16, 2015) ("*Norton* habeas case"). Dkt. No. 20-3. On June 9, 2015, the Central District of California construed plaintiff's motion as a motion to reconsider the denial of a certificate of appealability. So construed, the Central District of California denied plaintiff's motion. Dkt. No. 20-3 at 85-87. Before plaintiff received the order denying his motion for reconsideration in the *Norton* habeas case, plaintiff was temporarily transferred out of PBSP for an unrelated child custody hearing. Rather than immediately forwarding the Central District of California's mail to plaintiff, plaintiff alleges that defendant, who worked in PBSP's mail room, held onto the mail for 35 days and then returned it to the Central District of California.

Plaintiff inquired about the status of his motion for reconsideration in the *Norton* habeas case. On November 3, 2015, petitioner received notice from the Central District of California that the motion for reconsideration had been denied. On December 4, 2015, plaintiff filed a motion requesting permission to file a late notice of appeal in the *Norton* habeas case. Dkt. No. 20-3 at 91-95. On January 13, 2016, the Central District of California denied plaintiff's motion for leave to file a late notice of appeal in the *Norton* habeas case. Dkt. No. 20-3 at 97-100.

On August 27, 2017, plaintiff filed the underlying federal civil rights case alleging that defendant violated plaintiff's right to access the courts by preventing him from filing a timely notice of appeal in the *Norton* habeas case. Defendant argues that plaintiff has failed to state a claim for relief, and that defendant is entitled to summary judgment on the merits and based on qualified immunity. The court agrees that defendant is entitled to summary judgment on the merits and on the basis of qualified immunity, and will address both arguments below.

**MOTION FOR SUMMARY JUDGMENT**

I.  Standard of review

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a

Case No. 17-CV-04957 LHK (PR)
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. *See id.* If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*

II. <u>Merits</u>

Plaintiff claims that defendant violated plaintiff's right to access the courts by improperly holding onto plaintiff's legal mail for 35 days which resulted in plaintiff losing the opportunity to file a timely notice of appeal in the *Norton* habeas case.

Prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The Ninth Circuit has "traditionally differentiated between two types of access to courts claims: those involving prisoners' right[s] to affirmative *assistance* and those involving prisoners' rights to litigate without active *interference*." *Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011), *overruled on other grounds as stated by Richey v. Dahne*, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015). In order to establish a constitutional claim for denial of access to the courts resulting from the alleged hindrance of a plaintiff's ability to bring a legal claim, the hindered claim must be a nonfrivolous one. *See Lewis*, 518 U.S. at 352-53 & n.3. In other words, "aside from their affirmative right to the tools necessary to challenge their sentences or conditions of confinement, prisoners also have a right, . . . 'to pursue legal redress for claims that have a reasonable basis in law or fact.'" *Silva*, 658 F.3d at 1103.

"[P]rison officials are prohibited from engaging in malicious, affirmative, and intentional interference in a prisoner's right to litigate." *Stratmon v. Morris*, Case No. 1:12-cv-01837-DAD-

Case No. 17-CV-04957 LHK (PR)
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

3

SAB (PC), 2018 WL 460545, at *2 (E.D. Cal. Jan. 18, 2018). "This right [to access the courts without interference] does not require prison officials to provide affirmative assistance in the preparation of legal papers, but rather forbids states from erect[ing] barriers that impede the right of access of incarcerated persons." *Silva*, 658 F.3d at 1102 (internal quotation marks omitted).

Here, there is an absence of evidence that defendant actively interfered with plaintiff's right to access the courts. Notations made on the envelope containing the Central District of California's order denying plaintiff's motion for reconsideration in the *Norton* habeas case reveal at least partially where the mail had travelled after it arrived at PBSP on June 12, 2015. *Norton* habeas case, Dkt. No. 21 at 7. Specifically, the envelope shows that it had been received at "CIM" ("California Institution for Men") on June 24, 2015. *Norton* habeas case, Dkt. No. 21 at 7. Another marking underneath the notation of the date it was received at CIM reads "OTC – 6/26/15" and "RTS 7/3/15." *Norton* habeas case, Dkt. No. 21 at 7. Those markings generally mean that plaintiff was "out to court" on June 26, 2015, and CIM "return[ed the mail] to sender" on July 3, 2015. Hallock Decl. ¶ 14. A post office stamp on the envelope reads "Santa Ana, CA Jul. '15." *Norton* habeas case, Dkt. No. 21 at 7. Finally, the envelope was received in the Central District of California as undeliverable on August 4, 2015. *Norton* habeas case, Dkt. No. 21. At the very least, the undisputed evidence shows that the mail from the Central District of California which was received at PBSP on June 12, 2015, did not remain at PBSP through July 17, 2015 as plaintiff alleges.

The markings on the envelope containing the Central District of California's order denying plaintiff's motion for reconsideration in the *Norton* habeas case also correspond to plaintiff's movements within the prison system. On June 12, 2015, plaintiff was transferred from PBSP to Deuel Vocation Institution ("DVI") to attend a court hearing. Dkt. No. 21 at 19. The comments on plaintiff's movements record show that plaintiff was expected to return to PBSP. *Id.* From DVI, plaintiff travelled to Wasco State Prison on June 17, 2015, and then arrived at CIM on June 18, 2015. Dkt. No. 21 at 19. The comments on plaintiff's movements record show that the

transfer to CIM was permanent. *Id.* Plaintiff was transferred from CIM on June 26, 2016 to the Riverside County Sheriff for a court appearance. *Id.* Plaintiff remained in Riverside County through July 31, 2015, and then returned to CIM through September 8, 2015. *Id.* at 18. On September 9, 2015, plaintiff was transferred to California Medical Facility, and then on September 10, 2015, plaintiff was permanently transferred to PBSP. *Id.* at 17-18.

Typically, if legal mail is received for an inmate at PBSP, and the prison's electronic records indicate that the inmate has been permanently transferred to another institution, mail room staff will forward the mail immediately to that institution. Hallock Decl. ¶ 8. If the prison's electronic records indicate that the inmate is temporarily absent but will return to PBSP, the inmate's legal mail will be held for seven business days. *Id.* At the end of the seven business days, if the inmate has not returned to PBSP, the legal mail would be forwarded to the inmate's identified institution. *Id.*

It can be inferred from the record here that plaintiff's legal mail was held at PBSP once it was determined that plaintiff had been temporarily transferred out on June 12, 2015, and then seven business days later, the legal mail was forwarded from Pelican Bay State Prison to CIM where records indicated plaintiff was permanently housed. CIM then received the mail on June 24, 2015. On June 26, 2015, CIM noted that plaintiff was out to court. On July 3, 2015, CIM returned the mail to the sender because plaintiff was still out to court had still not come back to CIM. The returned mail travelled through the Santa Ana Post Office in July 2015, and was received in the Central District of California court on August 4, 2015.

Plaintiff has provided no evidence that defendant intentionally interfered with or erected a barrier to plaintiff's right to litigate. Plaintiff's facts are based on speculation and are inconsistent with the evidence.

The only non-speculative evidence linking defendant to plaintiff's mail is that defendant was working in the PBSP mail room on the June 12, 2015, the date the *Norton* habeas order from the Central District of California was received. Assuming defendant abided by the prison

Case No. 17-CV-04957 LHK (PR)
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

5

procedures, she would have noticed that plaintiff had been transferred out of PBSP temporarily and then placed plaintiff's mail to be held in the mailroom for seven business days. There is no non-speculative evidence that defendant improperly withheld the mail for 35 days and then returned it to the Central District of California on July 17, 2015.

The evidence does show that mail purportedly originating from plaintiff was sent to the Central District of California on July 17, 2015 even though plaintiff was not housed at PBSP on that day. Dkt. No. 21; Hallock Decl. ¶ 11 and Ex. B. However, there is no non-speculative evidence to show what was contained in that July 17, 2015 mail to the Central District of California. Plaintiff argues that the mail sent to the Central District of California on July 17, 2015 was the *Norton* habeas case order being returned to the Central District of California after defendant improperly held onto it. Even assuming defendant did receive and process the mail to plaintiff from the Central District of California on June 12, 2015, defendant was not working at PBSP on July 17, 2015, the day the mail log shows that mail was sent to the Central District of California on behalf of plaintiff. Dkt. No. 21; Hallock Decl. ¶ 17 and Ex. D.

While self-serving affidavits may establish a genuine issue of material fact, they must also state facts based on personal knowledge. *See Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001). Here, plaintiff's allegation carries no evidentiary weight because it is not based on personal knowledge. Plaintiff provides no facts from which it can be inferred that: (1) defendant held onto the June 12, 2015 mail received from the Central District of California; (2) the mail sent to the Central District of California on July 17, 2015 contained the *Norton* habeas case order; or (3) defendant was the individual who sent mail to the Central District of California on behalf of plaintiff on July 17, 2015.

Plaintiff has not established that defendant's actions or inaction were the proximate cause of actual prejudice to plaintiff. Plaintiff alleges that he was unable to file a timely notice of appeal because he did not receive timely notice of the Central District of California's order in the mail. However, plaintiff has not provided any non-speculative evidence to demonstrate that defendant

Case No. 17-CV-04957 LHK (PR)
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

6

proximately caused plaintiff's failure to receive timely notice of the Central District of California's order in the mail.

Based on the record here, plaintiff does not provide sufficient evidence to show that defendant actively interfered with plaintiff's right to access the courts. A one-time delay or mishandling of mail without any facts to support an intentional act to hinder plaintiff is insufficient to establish "active interference" to a prisoner's right to litigate. *See Silva*, 658 F.3d at 1104 (finding cognizable a claim that defendants actively interfered with prisoner's right to litigate by repeatedly transferring him to different institutions and that defendants seized and withheld the prisoner's legal materials in order to hinder plaintiff's ability to access the courts); *see, e.g.*, *Fields v. Mcdonnel*, Case No. , 2015 WL 7566623, at *5 (C.D. Cal. Nov. 24, 2015) (dismissing access to courts claim alleging that defendant deliberately withheld mail from the court which caused prisoner to miss court deadline because, inter alia, prisoner failed to allege that defendant acted "in order to hinder" prisoner's ability to litigate); *Franklin v. Soto*, Case No. CV 15-08379-CBM (KK), 2015 WL 7428515, at *6 (C.D. Cal. Nov. 20, 2015) (dismissing access to courts claim alleging that defendant mishandled mail by delaying receipt of mail from the court which caused prisoner to miss court deadline). Here, there is an absence of evidence to create a genuine issue of material fact that defendant acted with the intent to impede plaintiff's right to access the courts.

Thus, the court concludes that defendant is entitled to summary judgment as a matter of law.

III. Qualified immunity

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Case No. 17-CV-04957 LHK (PR)
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

7

Courts are not required to address the two qualified immunity issues in any particular order, and instead may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* "[U]nder either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment," and must, as in other cases, view the evidence in the light most favorable to the non-movant. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam).

With respect to the second prong of the qualified immunity analysis, the U.S. Supreme Court has held that "[a]n officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent . . . placed the statutory or constitutional question beyond debate." *City and County of San Francisco, Cal. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (omission in original) (internal quotation marks omitted). This is an "exacting standard" which "gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted).

Although it is not necessary that a prior decision rule "the very action in question" unlawful for a right to be clearly established, *Anderson v. Creighton*, 483 U.S. 635, 640 (1987), the U.S. Supreme Court has repeatedly cautioned that courts should not define clearly established law at a high level of generality, *see White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam). *See also Hamby v. Hammond*, 821 F.3d 1085, 1095 (9th Cir. 2016) (plaintiff need not find case with identical facts, but the further afield existing precedent lies the more likely that official's acts fall within vast zone of conduct that is constitutional).

Thus, the court must decide whether a prisoner's right to access the courts was clearly established such that a reasonable official would have understood that defendant's conduct violated that right. *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014). Specifically here, the question is whether a prison official's one-time act of delaying or mishandling a prisoner's mail from the court, without more, actively interferes with a prisoner's right to litigate such that it denies the

Case No. 17-CV-04957 LHK (PR)
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

8

right to access the courts. A court determining whether a right was clearly established looks to "[U.S.] Supreme Court and Ninth Circuit law existing at the time of the alleged act." *Community House, Inc. v. Bieter*, 623 F.3d 945, 967 (9th Cir. 2010).

It is well-established that prisoners have a constitutional right of access to the courts. *See Lewis*, 518 U.S. at 350; *Bounds*, 430 U.S. at 821. However, neither *Bounds* nor *Lewis* discusses the right to litigate without active interference. *Bounds* established a prisoner's right to affirmative assistance, and held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828. In *Lewis*, the U.S. Supreme Court did not speak to a prisoner's right to litigate without unreasonable interference, but rather limited the right to affirmative assistance to the pleading stage. *Silva*, 658 F.3d at 1103.

Because the U.S. Supreme Court has not definitively spoken on the contours of active interference, this court must look to existing Ninth Circuit law. The Ninth Circuit first recognized a First Amendment right to access courts without interference in *Silva*. *Silva*, 658 F.3d at 1103 ("we hold that prisoners have a right under the First and Fourteenth Amendments to litigate claims challenging their sentences or the conditions of their confinement to conclusion without *active interference* by prison officials") (emphasis in original).

However, the First Amendment right recognized in *Silva* is clearly distinguishable from the instant action in that the defendants in *Silva* were alleged to have acted with malicious intent. The plaintiff in *Silva* alleged that prison officials transferred the prisoner between different facilities and seized and withheld the prisoner's legal files for the purpose of hindering the prisoner's ability to litigate pending civil lawsuits. *Silva*, 658 F.3d at 1102-03 (finding that these alleged facts sufficiently stated a First Amendment claim to survive motion to dismiss). At most, *Silva* clearly established that a prisoner has a right to litigate without prison officials engaging in affirmative and malicious interference. It did not address whether a prison official's one-time act of delaying

Case No. 17-CV-04957 LHK (PR)
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

9

or mishandling a prisoner's mail from the court, without more, actively interferes with a prisoner's right to litigate such that it denies the right to access the courts.

District courts within the Ninth Circuit have also interpreted "active interference" to require something more than negligence but those courts have also not clearly defined the boundaries of "active interference." *See, e.g.*, *Williams v. Hazel*, Case No. 16-CV-01136-HSG, 2017 WL 4236968 (N.D. Cal. Sept. 25, 2017) (granting qualified immunity on access to courts claim because there was no clearly established law requiring prison officials to affirmatively locate missing property to assist inmate in meeting court deadline), *aff'd by* Case No. 17-17466 (9th Cir. June 20, 2018) (unpublished memorandum disposition); *Johnson v. Gonzalez*, Case No. 1:14-cv-01252-LJO-EPG-PC, 2016 WL 4764662, at *1, *3 (E.D. Cal. Sept. 12, 2016) (finding access to court claim cognizable when complaint alleged defendants knowingly destroyed legal files even after prisoner informed them he had five active court cases); *Fields v. Mcdonnel*, Case No. CV 15-03943-DDP (KK), 2015 WL 7566623, at *5 (C.D. Cal. Nov. 24, 2015) (dismissing access to courts claim alleging that defendant withheld mail from the court which caused prisoner to miss court deadline because, *inter alia*, prisoner failed to allege that defendant acted "in order to hinder" prisoner's ability to litigate); *Franklin v. Soto*, Case No. CV 15-08379-CBM (KK), 2015 WL 7428515, at *6 (C.D. Cal. Nov. 20, 2015) (dismissing access to courts claim alleging that defendant mishandled mail by delaying receipt of mail from the court which caused prisoner to miss court deadline); *Lopez v. Yates*, Case No. 1:11cv00107 LJO DLB PC, 2013 WL 5718722, at *4 (E.D. Cal. Oct. 18, 2013) (dismissing for failure to state a claim when complaint alleged that defendants failed to respond to prisoner's requests to appear by telephone for court hearing and concluding that claim did not allege facts rising to the level of active interference), *aff'd by* Case No. 13-17492 (9th Cir. Aug. 4, 2015) (unpublished memorandum disposition).

Other circuits also have not defined or otherwise determined the boundaries of "active interference," and those that have discussed it are similar to *Silva* in recognizing that "active interference" requires malicious or deliberate intent. *See, e.g.*, *Cohen v. Longshore*, 621 F.3d

Case No. 17-CV-04957 LHK (PR)
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

10

1311, 1317 (10th Cir. 2010) (reversing dismissal of access to courts claim when plaintiff alleged that prison mail clerk refused to send legal mail which prevented plaintiff from being able to file objections to magistrate judge's recommendation); *Morello v. James*, 810 F.2d 344, 347 (2d Cir. 1987) ("intentional obstruction of a prisoner's access to the courts is precisely the sort of oppression that the Fourteenth Amendment and section 1983 are intended to remedy"); *Jackson v. Procunier*, 789 F.2d 307, 312 (5th Cir. 1986) (concluding that prison officials' intentional delay of the mailing of the inmate's in forma pauperis filing, which caused dismissal of the inmate's case, stated a cognizable First Amendment claim at the pleading stage); *Galeas v. Inpold*, 845 F. Supp. 2d 685, 687-88 (W.D.N.C. Feb. 28, 2012) (asserting that access to courts claim for active interference requires facts showing that defendant's act was intentional rather than negligent or reckless).

These out of circuit cases do not assist in placing beyond debate the constitutional question of whether a prison official's one-time act of delaying or mishandling a prisoner's mail from the court, without more, actively interferes with a prisoner's right to litigate such that it denies the right to access the courts.

Even taking plaintiff's allegations as true – that defendant received the June 12, 2015 mail from the Central District of California, and then held onto it for 35 days only to return it to the Central District of California – it was not clearly established, either at the time of defendant's alleged actions and inaction or now, that a prison official's one-time act of delaying or mishandling a prisoner's mail from the court, without more, such as evidence of a malicious or deliberate intent to hinder, actively interferes with a prisoner's right to litigate such that it denies the right to access the courts. *See Brown v. Oregon Dep't of Corr.*, 751 F.3d 983, 990 (9th Cir. 2014) (defendants are not liable for violation of right that was not clearly established at time violation occurred).

In light of the lack of clearly established law, the court finds that defendant is entitled to qualified immunity.

Case No. 17-CV-04957 LHK (PR)
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

11

## CONCLUSION

Defendant's motion for summary judgment on the merits and based on qualified immunity is GRANTED. The clerk shall terminate all pending motions and close the file.

**IT IS SO ORDERED.**

DATED: 10/29/2018

*Lucy H. Koh*
LUCY H. KOH
United States District Judge